

Steve Larson, OSB No. 863540
Email: slarson@stollberne.com
Scott A. Shorr, OSB No. 961873
Email: sshorr@stollberne.com
Mark A. Friel, OSB No. 002592
Email: mfriel@stollberne.com
Stoll Stoll Berne Lokting & Shlachter P.C.
209 S.W. Oak Street, Fifth Floor
Portland, Oregon 97204
Telephone:    (503) 227-1600
Facsimile:    (503) 227-6840

Attorneys for Plaintiffs and the Putative Class



**ORIGINAL**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

DAVID KNIGHT, and DEBRA
KNIGHT, on behalf of themselves and all
others similarly situated,

                Plaintiffs,

             v.

SONY CORPORATION; SONY
OPTIARC AMERICA INC.; SONY
OPTIARC INC.; SONY NEC OPTIARC
INC.; SONY COMPUTER
ENTERTAINMENT AMERICA, INC.;
HITACHI, LTD; HITACHI AMERICA,
LTD.; LG ELECTRONICS INC.;
HITACHI-LG DATA STORAGE, INC.;
TOSHIBA CORPORATION; TOSHIBA
AMERICA INFORMATION SYSTEMS,
INC.; SAMSUNG ELECTRONICS CO.,
LTD; SAMSUNG ELECTRONICS
AMERICA, INC.; and TOSHIBA
SAMSUNG STORAGE TECHNOLOGY
CORPORATION,

                Defendants.

CV'10-  495  AA
Case No. _____

CLASS ACTION COMPLAINT

VIOLATION OF THE OREGON
ANTITRUST LAW; VIOLATION OF
THE SHERMAN ANTITRUST ACT

JURY TRIAL DEMANDED

{SSBLS Main Documents\8062\001\00248307-1 }

Page 1 -   CLASS ACTION COMPLAINT



Plaintiffs David Knight and Debra Knight ("Plaintiffs"), indirect purchasers of Optical Disk Drive Products as defined below, individually and on behalf of the Class described below, bring this class action against Defendants Sony Corporation, Sony Optiarc America, Inc., Sony Optiarc, Inc., Sony NEC Optiarc, Inc., Sony Computer Entertainment America, Inc., Hitachi, Ltd., Hitachi America, Ltd., LG Electronics Inc., Hitachi-LG Data Storage, Inc., Toshiba Corporation, Toshiba America Information Systems, Inc., Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Toshiba Samsung Storage Technology Corporation ("Defendants") for injunctive relief under section 16 of the Clayton Act, 15 U.S.C. § 26, and for damages under the Oregon Antitrust Law, ORS 646.705, *et seq.*, and hereby demands trial by jury. Plaintiffs allege that Defendants conspired to fix, raise, maintain, and stabilize the price of Optical Disk Drive Products sold throughout the United States and in Oregon during the Class Period as defined below, including through price-fixing, bid-rigging and market allocation. As a result of Defendants' unlawful conduct, Plaintiffs and members of the proposed Class paid higher prices for Optical Disk Drive Products than they would have paid in a competitive market.

## NATURE OF THE ACTION

1.     Optical disk drives are one of the largest growing markets in the electronics industry. In the United States and across the world, almost all forms of home entertainment and data storage are on optical disks, either in CD format, DVD format, or now in Blu-ray disc format. The Optical Disk Drive Products that are the subject of this lawsuit are capable of playing, and/or recording information to, the following optical media formats, among others: CDs (including CD-ROM, CD-R, and CD-RW); DVDs (including DVD-R, DVD+R, DVD-RW, DVD+RW, and DVD-RAM); HD-DVDs (including HD DVD-R, HD DVD-RW, and HD DVD-RAM); and/or Blu-ray Discs (including BD, BD-R and BD-RE). The Defendants and

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

their co-conspirators in this case control over 90 percent of this multibillion-dollar-a-year Optical

Disk Drive market. A criminal investigation by the United States DOJ has been launched into

the market for optical disk drives for anticompetitive conduct. These Defendants have a long

history of engaging in anti competitive conduct, having consistently sought to price fix a wide

variety of products sold in the United States, such as Dynamic Random Access Memory

("DRAM"), Thin Film Transistor Liquid Crystal Display ("TFT-LCD") and Cathode Ray Tude

("CRT"). Through business meetings across the world, as well as at trade association meetings

specific to their industry, these Defendants entered into an agreement and conspiracy to fix the

price of Optical Disk Drive Products. When the price of Optical Disk Drive Products began to

dip, the Defendants entered into an illegal agreement to prevent competitors from entering into

the market and to keep prices at a supracompetitive level.

     2.      This case arises out of a long-running conspiracy from at least October 1, 2005

until the present ("the Class Period"), among Defendants and their co-conspirators, with the

purpose and effect of fixing, raising, maintaining and stabilizing prices for Optical Disk Drive

Products sold indirectly to Plaintiffs and other indirect purchasers who purchased such products

in Oregon.

     3.      Defendants, the leading manufacturers of optical disk drives, and their

co-conspirators formed an international cartel to illegally restrict competition in the Optical Disk

Drive Product market, which included targeting and burdening indirect purchasers who made

purchases throughout the United States and Oregon. During the Class Period, the conspiracy

affected billions of dollars of commerce throughout the United States and Oregon. The

conspiracy included communications and meetings in which Defendants agreed to eliminate

competition and fix the prices for Optical Disk Drive Products. As a result of Defendants' price-

{SSBLS Main Documents\8062\001\00248307-1 }

Page 3 -   CLASS ACTION COMPLAINT

fixing conspiracy, Plaintiffs have been injured in their business and property by paying more for

Optical Disk Drive Products than Plaintiffs otherwise would have paid in the absence of

Defendants' conspiracy.

       4.      An optical disk drive is a disk drive that uses laser light (or electromagnetic

wavelength) to read and/or write data to or from an optical disk, such as a Compact Disc (CD), a

Digital Video Disc (DVD), or the more recently-developed Blu-ray Disc (BD). Optical disk

drives are an integral part of stand-alone consumer electronics appliances such as CD

players/recorders, DVD players/recorders, and Blu-ray Disc players/recorders that are used to

store and play music and movies. Optical disk drives are also widely used in computers to read

and write data for a variety of uses, including software programs and data compilations, and to

store and play music and video in much the same way as in stand-alone consumer electronics

products with optical disk drives. As a result, in computers, optical disk drives (along with flash

memory drives) have largely replaced "floppy" disk drives and the even-older tape drives that

used magnetic disks or tapes to record and store data. In consumer electronics, products with

optical disk drives (e.g. CD players and DVD players/recorders) have also displaced many of the

consumer electronics products previously used to record and play music and video (e.g. cassette

decks, VCRs).

       5.      As used herein, Optical Disk Drive Products include both optical disk drives (e.g.

CD drives, DVD drives, Blu-ray drives) manufactured by any of the named Defendants or their

affiliates, subsidiaries or co-conspirators, as well as products that contain optical disk drives (e.g.

DVD players, video game consoles like the Sony PlayStation®3, and personal computers with

DVD drives) manufactured by any of the named Defendants or their affiliates, subsidiaries or

co-conspirators. Many of the Defendants are not only the major manufacturers and sellers of

{SSBLS Main Documents\8062\001\00248307-1 }

Page 4 -   CLASS ACTION COMPLAINT

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET
PORTLAND, OREGON 97204
TEL (503) 227-1600  FAX (503) 227-6840

optical disk drives, but they are also some of the largest manufacturers and sellers of computers and consumer electronics products that contain optical disk drives.

6.    Plaintiffs bring this action seeking treble damages, and costs of suit (including reasonable attorneys fees) under ORS 646.725, ORS 646.780(1)(a) and ORS 646.780(3)(a), to recover for the injuries that Plaintiffs and all others similarly situated sustained as a result of the Defendants' conspiracy to fix, raise, maintain and stabilize the prices of Optical Disk Drive Products. Plaintiffs also bring this action seeking injunctive relief and costs of suit (including reasonable attorneys fees) under Section 16 of the Clayton Act, 15 U.S.C. § 26.

7.    Except where specifically stated otherwise, all allegations herein are on information and belief.

## JURISDICTION AND VENUE

8.    This action arises under the Oregon Antitrust Law, ORS 646.705, *et seq.*, under section 1 of the Sherman Act, 15 U.S.C. § 1, and under section 16 of the Clayton Act, 15 U.S.C. § 26.

9.    Jurisdiction of this Court is founded on 15 U.S.C. § 26, and 28 U.S.C. §§ 1331, 1332, 1337, and 1367.

10.    Venue as to Defendants is proper in this district pursuant to 28 U.S.C. § 1391(b), (c), in that more than one defendant resides in the judicial district, is licensed to do business and/or is doing business in this judicial district. The interstate trade and commerce described herein has been carried out, in part, within this district.

11.    Defendants are subject to this Court's jurisdiction because of their nationwide contacts and other activities, as well as their contacts and other activities with the State of Oregon.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET
PORTLAND, OREGON 97204
TEL. (503) 227-1600  FAX (503) 227-6840

## PARTIES

### A.    Plaintiffs

12.    Plaintiffs David Knight and Debra Knight (the "Knights") are individuals residing in Hammond, Oregon. During the Class Period, the Knights indirectly purchased Optical Disk Drive Products from one or more Defendants or their controlled subsidiaries. As a result of the conspiracy, the Knights have been economically injured in that the price they paid for the Optical Disk Drive Products had been artificially raised to anti-competitive levels by Defendants and therefore they paid more than they otherwise would have paid.

### B.    Defendants

13.    Defendant **Sony Corporation** is a business entity organized under the laws of Japan, with its principal place of business located at 1-7-1, Konan, Minato-Ku, TKY 108-0075, Japan. During the Class Period, Sony Corporation manufactured, sold and/or distributed Optical Disk Drive Products throughout the United States and Oregon.

14.    Defendant **Sony Optiarc America Inc.**, formerly known as Sony NEC Optiarc Inc., is a wholly owned subsidiary of Sony Optiarc Inc. Sony Optiarc America Inc. is a Delaware corporation with its principal place of business located at 1730 N. First Street, San Jose, California 95112. Sony Optiarc America Inc. was originally established as a joint venture in April 2006 before Sony announced that it would take over NEC's 45 percent share on September 11, 2008. During the Class Period, Sony Optiarc America Inc. manufactured, sold and/or distributed Optical Disk Drive Products throughout the United States and Oregon.

15.    Defendant **Sony Optiarc Inc.** is a Japanese company with its headquarters located at 4-16-1 Okata, Atsugi-shi, Kanagawa 243-0021, Japan. During the Class Period, Sony

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET
PORTLAND, OREGON 97204
TEL. (503) 227-1600  FAX (503) 227-6840

Optiarc Inc. manufactured, sold and/or distributed Optical Disk Drive Products throughout the United States and Oregon.

16.     Defendant **Sony NEC Optiarc Inc.** was a Japanese company with its headquarters located at 4-16-1 Okata, Atsugi-shi, Kanagawa 243-0021, Japan. Defendant Sony NEC Optiarc Inc, was created on April 3, 2006 as a joint venture between defendants Sony Corp. and NEC Corp. in which Sony Corp. had a 55 percent interest and NEC Corp. had a 45% interest. Sony Corp. purchased NEC Corp.' s interest in Sony NEC Optiarc Inc. in 2008 and renamed it Sony Optiarc Inc. During the Class Period, Sony NEC Optiarc Inc. manufactured, sold and/or distributed Optical Disk Drive Products throughout the United States and Oregon.

17.     Defendant **Sony Computer Entertainment America Inc.** is a wholly owned subsidiary of Sony Computer Entertainment Inc., with its headquarters located at 919 East Hillsdale Blvd., Forster City, California 94404. Sony Computer Entertainment America Inc, is registered to transact business in the State of Oregon. During the Class Period, Sony Computer Entertainment America Inc. manufactured, sold and/or distributed Optical Disk Drive Products throughout the United States and Oregon.

18.     Defendants Sony Corporation, Sony Optiarc America Inc., Sony NEC Optiarc Inc., Sony Optiarc Inc., and Sony Computer Entertainment America, Inc. are referred to individually and collectively herein as **"Sony."**

19.     Defendant **Hitachi, Ltd.,** is a business entity organized under the laws of Japan with its principal executive office at 6-6, Marunouchi l-chome, Chiyoda-ku, Tokyo 100-8280, Japan. Hitachi, Ltd. controls an integrated global enterprise comprised of itself and other entities including defendant Hitachi America, Inc., and defendant Hitachi-LG Data Storage, Inc. During

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET
PORTLAND, OREGON 97204
TEL (503) 227-1600  FAX (503) 227-6840

the Class Period, Hitachi, Ltd., manufactured, sold and/or distributed Optical Disk Drive

Products throughout the United States and Oregon.

20.     Defendant **Hitachi America, Inc.,** is a wholly owned subsidiary of Hitachi, Ltd.,

with its headquarters located at 2000 Sierra Point Pkwy., Brisbane, California 94005-1835.

Hitachi America, Inc. is registered to transact business in the State of Oregon.  During the Class

Period, Hitachi America, Inc. manufactured, sold and/or distributed Optical Disk Drive Products

throughout the United States and Oregon

21.     Defendants Hitach, Ltd. and Hitachi America, Inc., are referred to individually

and collectively herein as **"Hitachi."**

22.     Defendant **LG Electronics Inc. ("LG")** is a business entity organized under the

laws of Korea, with its principal place of business at 26/F Twin Tower South 20, Yeouido-Dong,

Yeoungdeungpo-Gu, Seoul, SEO 150-721, South Korea.  LG controls an integrated global

enterprise comprised of itself and other entities including defendant Hitachi-LG Data Storage,

Inc.  During the Class Period, LG manufactured, sold and/or distributed Optical Disk Drive

Products throughout the United States and Oregon.

23.     Defendant **Hitachi-LG Data Storage, Inc.** is a business entity organized under

the laws of Japan with its principal place of business located at 4F MSC Center Building, 22-23

Kaigan 3-Chome, Minato-Ku, Tokyo, Japan, 108-0022.  Hitachi-LG Data Storage, Inc. is a joint

venture formed in January 2001 and is owned 51 percent by defendant Hitachi and 49 percent by

defendant LG. During the Class Period, Hitachi-LG Data Storage, Inc. manufactured, sold and/or

distributed Optical Disk Drive Products throughout the United States and Oregon.

24.     Defendant **Toshiba Corporation** is a business entity organized under the laws of

Japan, with its principal place of business at 1-1, Shibaura 1-chome, Minato-ku, Tokyo

{SSBLS Main Documents\8062\001\00248307-1 }

Page 8 -   CLASS ACTION COMPLAINT

105-8001, Japan. Toshiba Corp. controls an integrated global enterprise comprised of itself and other entities including defendant Toshiba American Information Systems, Inc. and defendant Toshiba Samsung Storage Technology Corp. During the Class Period, Toshiba Corporation manufactured, sold and/or distributed Optical Disk Drive Products throughout the United States and Oregon.

25.     Defendant **Toshiba America Information Systems, Inc.** is a wholly owned subsidiary of Toshiba America, Inc., with its headquarters located at 9740 Irvine Blvd., Irvine, California 92618. Toshiba America Information Systems, Inc. is registered to transact business in the State of Oregon. During the Class Period, Toshiba American Information Systems, Inc. manufactured, sold and/or distributed Optical Disk Drive Products throughout the United States and Oregon.

26.     Defendants Toshiba Corporation and Toshiba America Information Systems, Inc., are referred to individually and collectively herein as **"Toshiba."**

27.     Defendant **Samsung Electronics Co. Ltd.** is a business entity organized under the laws of South Korea, with its principal place of business at Samsung Main Building 250, Taepyeongno 2-ga, Jung-gu, Seoul 100-742, Korea. Samsung controls an integrated global enterprise comprised of itself and other entities including defendant Samsung Electronics America, Inc. and Toshiba Samsung Storage Technology Corp. During the Class Period, Samsung manufactured, sold and/or distributed Optical Disk Drive Products throughout the United States and Oregon.

28.     Defendant **Samsung Electronics America, Inc.**, is a wholly owned subsidiary of Samsung Electronics Co., Ltd., with its headquarters located at 105 Challenger Rd., Ridgefield Park, New Jersey 07660. Samsung Electronics America, Inc. is registered to transact business in

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET
PORTLAND, OREGON 97204
TEL. (503) 227-1600  FAX (503) 227-6840

the State of Oregon. During the Class Period, Samsung Electronics America, Inc. manufactured, sold and/or distributed Optical Disk Drive Products throughout the United States and Oregon.

29.     Defendants Samsung Electronics Co., Ltd., and Samsung Electronics America, Inc., are referred to individually and collectively herein as **"Samsung."**

30.     Defendant **Toshiba Samsung Storage Technology Corp. ("TSST")** is a business entity organized under the laws of Japan with its principal place of business located at Solid Square 580, Horikawacho, Saiwai-Ku, Kawasaki, KNG 212-0013, Japan. Toshiba Samsung Storage Technology Corp. is a joint venture formed in 2004 and owned 51 percent by defendant Toshiba and 49 percent by defendant Samsung. During the Class Period, Toshiba Samsung Storage Technology Corp. manufactured, sold and/or distributed Optical Disk Drive Products throughout the United States and Oregon.

31.     On information and belief, other partnerships, corporations, or other business entities, unknown to Plaintiffs, are co-conspirators with Defendants in their unlawful restraint of trade. These other co-conspirators have facilitated, adhered to, participated in, and/or communicated with others regarding the conspiracy.

32.     The conduct alleged herein was Defendants' conduct or actions ordered or done by Defendants' officers, agents, employees, or representatives, while engaged in the usual management of Defendants' business.

## AGENTS AND CO-CONSPIRATORS

33.     Various persons that are not named as Defendants herein have participated as co-conspirators in the violations alleged herein and have performed acts and made statements in furtherance thereof. Plaintiffs reserve the right to name some or all of these persons as Defendants at a later date.

{SSBLS Main Documents\8062\001\00248307-1 }

Page  10 -  CLASS ACTION COMPLAINT

34.     Co-conspirator **Koninklijke Philips Electronics N.V. ("Philips")** is a business

entity organized under the laws of The Netherlands, with its principal place of business at

Groenewoudseweg 1, Eindhoven 5621 BA, The Netherlands. Philips controls an integrated

global enterprise comprised of itself and other entities including defendant Philips & Lite-On

Digital Solutions Corporation. During the Class Period, Philips manufactured, sold and/or

distributed Optical Disk Drive Products throughout the United States and Oregon.

35.     Co-conspirator **Lite-On IT Corporation ("Lite-On")** is a business entity

organized under the laws of Taiwan, with its principal place of business at 12-15F, 392, Jui

Kuang Road, Taipei City, TAP 11492, Taiwan. Lite-On controls an integrated global enterprise

comprised of itself and other entities including defendant Philips & Lite-On Digital Solutions

Corporation. During the Class Period, Lite-On manufactured, sold and/or distributed Optical

Disk Drive Products throughout the United States and Oregon.

36.     Co-conspirator **Philips & Lite-On Digital Solutions Corporation** is a business

entity organized under the laws of Taiwan, and a joint venture between Koninklijke Philips

Electronics N.V. and Lite-On IT Corporation established in March 2007, with its principal place

of business located at 16F, 392, Jui Kuang Road, Taipei City, TAP 11492, Taiwan. During the

Class Period, Philips & Lite-On Digital Solutions Corporation manufactured, sold and/or

distributed Optical Disk Drive Products throughout the United States and Oregon.

37.     Co-conspirator **Philips & Lite-On Digital Solutions USA, Inc.** is a Delaware

corporation with its principal place of business located at 42000 Christy Street, Fremont,

California 94538. During the Class Period, Philips & Lite-On Digital Solutions USA

manufactured, sold and/or distributed Optical Disk Drive Products throughout the United States

and Oregon.

{SSBLS Main Documents\8062\001\00248307-1 }

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET
PORTLAND, OREGON 97204
TEL (503) 227-1600  FAX (503) 227-6840

38.     Whenever in this complaint reference is made to any act, deed or transaction of any corporation, the allegation means that the corporation engaged in the act, deed or transaction by or through its officers, directors, agents, employees or representatives while they were actively engaged in the management, direction, control or transaction of the corporation's business or affairs.

39.     Defendants are also liable for acts done in furtherance of the alleged conspiracy by companies they acquired through mergers and acquisitions.

40.     Each of the Defendants named herein acted as the agent of, co-conspirator with, or joint venturer of the other Defendants with respect to the acts, violations and common course of conduct alleged herein. Each Defendant that is a subsidiary of a foreign parent acts as the United States agent for Optical Disk Drives and/or Optical Disk Drive Products made by its parent company.

## EFFECT ON INTERSTATE AND INTRASTATE COMMERCE

41.     Defendants conduct business throughout the United States, including in the State of Oregon, directly and through agents, and they have purposefully availed themselves of the laws of the United States and Oregon. Defendants' products are sold in the flow of interstate commerce and Defendants' activities had a direct, substantial and reasonably foreseeable effect on such commerce.

42.     Defendants' conspiracy further substantially affected commerce in Oregon. Defendants have purposefully availed themselves of the laws of Oregon in connection with their activities relating to the pricing of Optical Disk Drive Products. Defendants produced, promoted, sold, marketed and/or distributed Optical Disk Drive Products in Oregon, thereby

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

purposefully profiting from access to indirect purchasers in Oregon. As a result of the activities described herein, Defendants:

        a.        Caused tortious damage to the residents of Oregon;

        b.        Caused tortious damage in Oregon by acts or omissions committed outside of Oregon by regularly doing or soliciting business in Oregon;

        c.        Engaged in a persistent course of conduct in Oregon and/or derived substantial revenue from the marketing of Optical Disk Drive Products in Oregon (and services relating to such marketing); and

        d.        Committed acts or omissions that they knew or should have known would cause damage (and did, in fact, cause such damage) in Oregon while regularly doing business in Oregon, engaging in other persistent courses of conduct in Oregon and/or deriving substantial revenue from the marketing of Optical Disk Drive Products (and services relating to such marketing) in Oregon.

43.       The conspiracy described herein affected adversely every person in Oregon who indirectly purchased Optical Disk Drive Products. Defendants' conspiracy has lasted for many years and resulted in monetary damages to purchasers in Oregon as identified herein.

44.       Prices of Optical Disk Drive Products in Oregon can be manipulated within Oregon, outside of it, or both. Without enforcing the Oregon Antitrust Law, or the Sherman Antitrust Act, companies that break the law will go unpunished. Defendants knew that commerce in Oregon would have to be adversely affected in order to implement their conspiracy.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET
PORTLAND, OREGON 97204
TEL. (503) 227-1600  FAX (503) 227-6840

## CLASS ACTION ALLEGATIONS

45.     Plaintiffs bring this action both on behalf of itself, and as a class action pursuant

to Federal Rules of Civil Procedure, Rules 23(a), 23(b)(2) and (b)(3), on behalf of the following

class (the "Class").

> All individuals and entities who, during the period from October 1, 2005 through
> the present (the "Class Period"), purchased Optical Disk Drive Products in
> Oregon indirectly from the defendants or their subsidiaries. Excluded from the
> Class are defendants and their parents, subsidiaries, affiliates, and all
> governmental entities.

46.     The Class is so numerous that joinder of all members is impracticable.  Due to the

nature of the trade and commerce involved, Plaintiffs believe that the members of the Class are

geographically dispersed throughout Oregon, and that joinder of all Class members would be

impracticable.  While the exact number of Class members is unknown to Plaintiffs at this time,

Plaintiffs believe that there are, at least, thousands of members of the Class and that their

identities can be learned from Defendants' books and records.

47.     Plaintiffs' claims are typical of the claims of the other members of the Class

because Plaintiffs indirectly purchased Optical Disk Drive Products from one or more of the

Defendants.

48.     Plaintiffs and the members of the Class indirectly purchased Optical Disk Drive

Products at artificially maintained, non-competitive prices established by the actions of

Defendants and their unnamed co-conspirators in connection with the restraint of trade alleged

herein.  Plaintiffs and the members of the Class have all sustained damage in that they paid

inflated prices for Optical Disk Drive Products due to Defendants' conduct in violation of federal

and Oregon law as complained of herein.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET
PORTLAND, OREGON 97204
TEL. (503) 227-1600  FAX (503) 227-6840

49.     Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class action and antitrust litigation.

50.     Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

51.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

    a.      Whether Defendants engaged in a contract, combination or conspiracy among themselves to fix, maintain, or stabilize the price of Optical Disk Drive Products sold in Oregon;

    b.      Whether the conduct of Defendants caused the prices of Optical Disk Drive Products to be artificially inflated;

    c.      Whether Defendants engaged in a contract, combination, and/or conspiracy to restrict output of Optical Disk Drive Products sold in Oregon;

    d.      Whether Defendants' conduct caused injury to the members of the Class and, if so, the proper measure of damages;

    e.      Whether Plaintiffs and the other members of the Class are entitled to, among other things, injunctive relief, and if so, the nature and extent of such injunctive relief; and

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

f.      Whether Defendants undertook actions to conceal the unlawful contract, combination or conspiracy described herein.

52.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all Class members is impracticable. The prosecution of separate actions by individual members of the Class would impose heavy burdens upon the courts and Defendants, and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Class. A class action would achieve substantial economies of time, effort and expense, and would assure uniformity of decision as to persons similarly situated without sacrificing procedural fairness.

## INTERSTATE TRADE AND COMMERCE

53.     During the Class Period, each Defendant, or one or more of its subsidiaries, sold Optical Disk Drive Products in Oregon in a continuous and uninterrupted flow of interstate commerce and foreign commerce, including through and into this judicial district.

54.     During the Class Period, Defendants collectively controlled a majority of the market for Optical Disk Drive Products, globally, in Oregon and within this district.

55.     The business activities of the Defendants substantially affected interstate trade and commerce in Oregon and caused antitrust injury in Oregon.

56.     Sony Optiarc Inc., had sales of $1.52 billion for the year ended March 2008, the last year for which Sony disclosed the unit's annual revenue.

57.     Hitachi-LG Data Storage had revenue of $2.4 billion in 2005, the last year for which figures are available, while Toshiba Samsung Storage forecast revenue of 250 billion yen in fiscal 2004 when it was established.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

58.     Samsung in 2008 estimated that the optical disk drive market for personal

computers is 313 million units per year and the optical disk drive market for all other

applications (e.g., automotive audio and video, personal video recorders, set top boxes, CD/DVD

players and recorders, camcorders, and game consoles) is 200 million units per year.

## FACTUAL ALLEGATIONS

### A.     Optical Disk Drive Technology

59.     Optical discs contain microscopic pits where data are stored.  These pits are made

from a crystalline metal alloy and are usually pressed into the disc in a spiral arrangement,

starting at the center of the disc.  Once a disc containing information is inserted into the optical

disk drive, the disc spins while a lens inside the device guides a semiconductor laser beam over

the disc and a photodiode detects the light reflected from the disc's bumps and pits.  The laser

moves outward from the center of the disc, scanning over the disc's surface.  Then the photo

diode reads the light's reflection as a binary code (a series of ones and zeros) that the computer

translates into usable data. Changes in the intensity of the beams as the lasers hit the pits are

detected and translated into electrical signals.  The more pits that can be packed onto the disc, the

more data the disc can store.  The pits are approximately 0.8 micrometers on CDs, 0.4

micrometers on DVDs, and 0.15 micrometers on BDs.  Reading the different disc formats

requires the optical disk drive to have lasers of different wavelengths. Blu-ray disc players use a

shorter wavelength laser, which is blue-violet, to read discs.  Additional layers can be added to

the disc as well, increasing storage capacity.  In addition to reading discs, optical disk drives can

write and rewrite on the disc, depending on the technology of the drive and accompanying disc.

60.     When a recordable disc (e.g., CD-R, DVD-R or BD-R) is inserted into an optical

disk drive that has the ability to record data, the optical disk drive's laser is used to selectively

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET
PORTLAND, OREGON 97204
TEL. (503) 227-1600  FAX (503) 227-6840

heat parts of the organic photosensitive dye layer. By exposing the disc to light with the laser, the reflective properties of the disc's surface change, which causes the photo diode to recognize these changes as bumps and pits and read the new information on the disc.

61. Optical disk drives include half-height and slim models. Half height optical disk drives are thicker and generally incorporated into desktop computer towers. Slim optical disk drives are thinner and generally incorporated into laptop computers. As laptop computers have become more popular with consumers, demand for slim optical disc drives has increased and is expected to overtake half-height demand over the next five years. An optical disk drive is a disk drive that uses laser light or electromagnetic waves as part of the process of reading or writing data to or from optical disks. Some drives can only read from disks, but other recent drives are commonly both readers and recorders. Recorders are sometimes called "burners" or "writers." Compact discs, DVDs, and Blu-ray disks are common types of optical media which can be read and recorded by optical disk drives.

62. An optical drive is about the size of a thick book. The front of the drive has a small Open/Close button that ejects and retracts the drive bay door. This is how media like CDs, DVDs, and BDs are inserted into and removed from the drive. Where the disc drive is intended for internal use in a computer, the sides of the drive have pre-drilled, threaded holes for easy mounting in the drive bay in the computer case. In that case, the optical drive is mounted so the end with the connections faces inside the computer and the end with the drive bay faces outside. The back end of the optical drive generally contains a port for a cable that connects to the motherboard. Also here is a connection for power from the power supply. Most optical drives also have jumper settings on the back end that define how the motherboard is to recognize the drive when more than one is present. These settings vary from drive to drive.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

## B.  Industry Background

63.    The optical disk was invented in 1958. In 1961 and 1969 patents were registered for the analog optical disk for video recording. In 1969 Philips began their first optical videodisk experiments. The first optical disk drive was invented with the creation of the audio compact disc (audio "CD"), which was jointly invented by Sony and Philips Electronics ("Philips") and intended to store analog video signals and store music and computer software. In 1972, Philips announced a technique for storing audio recordings on an optical disc with a small diameter. At the same time, Sony was exploring optically recording audio on a larger disc but was focusing on developing an error correction technique. In 1978, Sony and Philips agreed on a single format for the disc and the error correction method that would be used. The compact disc system was introduced to the public in Japan and Europe in 1982. Since the 1980s, several companies have created spin-offs of the CD project by covering specific CD-based applications and extending the previously established standards set by Sony and Philips.

64.    According to reporters who cover the Optical Disk Drive Products market, the history of the industry, "although short, has been intense." The first-generation of optical disk drives used CDs that could store 650 megabytes of data, but for several years the CDs were available only in a read-only format (e.g. CD-ROMs). Once the standard of how to create a CD and an optical device that reads the information on the CD were established, CD-ROM drives began to penetrate the computer market. Optical disc drives have been in common use in computers since the 1990s, when CD-ROM drives became affordable for the average consumer. In the mid-1990s, a consortium of manufacturers developed the second generation of the optical disk, the DVD. The second-generation of drives used DVDs that could store 4.7 gigabytes, but DVDs were more quickly available in both a read-only format (e.g. DVD-ROMs) and a format

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

that allowed both reading and recording (e.g. DVD-RWs, DVD-RAMs). The DVD was intended to store great amounts of data, including broadcast quality digital video. Optical disk drives using DVDs are currently the most prevalent in both consumer electronics products and computers, but DVD drives are now being replaced by the third-generation of optical disk drives.

  65. The third-generation of drives use Blu-ray Discs (BDs) that can store in excess of 20 gigabytes, and also have both read-only and read/record formats. (Toshiba developed and promoted a High-Definition ("HD")-DVD format for third-generation optical disk drives, but in June 2008 Toshiba announced that it would no longer develop or manufacture optical disk drive using HD-DVDs, and would instead use the Blu-ray Disc format developed and promoted by Sony.) In 2006, the specifications for the third generation optical disc, the Blu-ray Disc format, was finalized. The Blu-ray standard was developed by the Blu-ray Disc Association, an industry group which included makers of consumer electronics, computer hardware, and motion pictures. The Blu-ray format was designed to supersede the DVD format and dramatically improve on the quality and capacity of the DVD. The Blu-ray optical disc was meant to be able to distribute high-definition video and support greater data storage capacity than the DVD. Afterwards, manufacturers began to develop optical disc drives for computers that could read and write both DVDs and Blu-ray discs. The third generation optical disks, Blu-ray and HD-DVD began in development in 2000 and were meant for distributing high-definition video and support greater data storage capacities.

  66. Throughout the industry's history, but especially after 2000, the optical disk drive market, which requires significant technical resources and advanced manufacturing capabilities, has been dominated by a small group of manufacturers. The industry has also consistently been faced with downward pricing pressures, including those resulting from the technological

{SSBLS Main Documents\8062\001\00248307-1 }

Page 20 - CLASS ACTION COMPLAINT

advances in optical disk drive technology described above. As the Defendants hone their ability to manufacture these Optical Disk Drive Products more efficiently and at a lower cost, the price of this technology invariably begins to decline. However, the Defendants, sensing that the price of Optical Disk Drive Products was declining, decided to collude and enter into a price fixing agreement in order to prevent prices from dropping too far.

Today, optical disk drives are a standard component on almost every computer used in the United States. Due to the increasing popularity of personal computers, hundreds of millions of optical disk drives and Optical Disk Drive Products are shipped by Defendants each year, generating billions of dollars in annual revenues. According to an IDC analysis, between 2004 and 2008, worldwide optical disk drive shipments generated over $45 billion in revenues. Digitimes research estimates that worldwide optical disk drive shipments increased at an annual rate of approximately 10 percent, exceeding 300 million by 2007. Between 2004 and 2008, the sale of Optical Disk Drive Products generated over $45 billion in revenues. According to Gartner, by 2013, the optical disk drive market will grow to $3.9 billion. Since the optical disk drives market is dominated by a group of manufacturers and it is oligopolistic in nature, the market is conducive to the collusive conduct alleged herein.

67.     Optical disk drives are an integral part of stand-alone consumer electronics appliances such as CD players, DVD players/recorders, and Blu-ray Disc players that are used to play (and record) music and movies.

68.     Optical disk drives, such as CD-ROM (read-only memory) drives and DVD-RW (read/write) drives, are also widely used in computers to read and write data for a variety of uses, including software programs and data compilations, as well to store and play music and video in much the same way as in stand-alone consumer electronics products with optical disk drives.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

69.     Defendant Sony's President and Electronics CEO, Ryobi Chubachi, stated after the signing of a Memorandum of Understanding between Sony and NEC in 2005 that "Optical disc drives are key components for a broad range of devices and we are strategically focused our development resources in this sector." NEC's President Akinobu Kanasugi added that, "The market for high value-added drives to be integrated into PCs and consumer electronics products is rapidly expanding."

70.     As the Optical Disk Drives Products market has changed, the Defendants have consistently remained leaders in the industry as a result of their conspiratorial acts. While the market for CD-ROMs has decreased, the market for Blu-ray discs has grown exponentially as consumers shift towards the new format. In a 2008 consumer survey, 56 percent of customer respondents would consider purchasing a Blu-ray disc player if there was a significant price drop. The Defendants, if they were acting in a non-conspiratorial manner, would have slashed their prices in an effort to obtain as large a share of the market as possible. However, by entering into a price-fixing agreement, each of the Defendants would be able to hold steady on their market share without any significant price reductions.

C.     **Opportunity for Collusion**

71.     During the Class Period, the optical disk drive industry has experienced several factors that have contributed to the opportunity for defendants and their co-conspirators to carry out their conspiracy, including but not limited to: (1) market concentration, (2) joint venture collaborations; (3) significant barriers to entry; (4) common trade associations and business organizations; and (5) the standardization of Optical Disk Drive Products.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET
PORTLAND, OREGON 97204
TEL. (503) 227-1600  FAX (503) 227-6840

### i.  Market Concentration and Joint Ventures

72.     Since the Optical Disk Drive Products market is dominated by a group of

manufacturers and it is oligopolistic in nature, the market is conducive to the collusive conduct

alleged herein.  According to published reports, during the Class Period, the Optical Disk Drive

Products industry has been dominated by Defendants and their Co-Conspirators.  During the

Class Period the joint venture between Hitachi and LG Electronics, Hitachi-LG Data Storage,

had a 27 percent market share; the joint venture between defendants Toshiba and Samsung,

defendant Toshiba Samsung Storage Technology had a 20 percent market share; defendant Sony

Optiarc America had a 17 percent market share; and Co-Conspirator Philips & Lite-On Digital

Solutions Corporation had a 30 percent market share.  Together these defendants and Co-

conspirators control over 90 percent of the global market for Optical Disk Drive Products.

### ii.  Joint Venture Collaboration

73.     In October of 2000 Hitachi, Ltd., and LG Electronics Inc. joined together to form

Hitachi-LG Data Storage, Inc. ("HLDS"), a joint venture company for the development, design

and marketing of optical disk drives. HLDS is majority owned by Hitachi in a 51/49 percent

equity split with its headquarters in Tokyo.

74.     In April of 2003 Samsung Electronics and Toshiba Corporation signed a

memorandum of understanding.  In January 2004 Samsung and Toshiba concluded an agreement

to integrate their optical disk drive businesses into a single entity.  In April 2004 Toshiba

Samsung Storage Technology Corp and its Korean subsidiary were launched to develop, market

and design optical disk drives.

75.     In April of 2006, Sony Corporation and NEC Corporation joined forces to create

Sony NEC Optiarc Inc.  At the formation of the joint venture, Sony had a 55 percent equity share

{SSBLS Main Documents\8062\001\00248307-1 }

Page  23 -  CLASS ACTION COMPLAINT

and NEC 45 percent and was projected to capture 20 percent of the optical disk drive market. On September 11, 2008, Sony purchased NEC Corp.'s interest in Sony NEC Optiarc, Inc., and renamed it Sony Optiarc, Inc.

76.     In 2006, Lite-On IT acquired BenQ's Optical Disc Drive business to become the second largest optical disc drive manufacturer in the world. Lite-On bought out the BenQ shares under the deal and the joint venture was renamed Philips & Lite-On Digital Solutions.

77.     The joint ventures of each of these companies allowed them to share and have access to each of their parent companies' patents and technologies without the need to pay royalties.

### iii.     Barriers to Entry

78.     There are significant manufacturing and technological barriers to entry into the optical disk drive industry. In order to compete in the optical disk drive industry, companies have to spend hundreds of millions of dollars in research and development, licensing, and manufacturing of products. Moreover, the ownership and control exerted by defendants over Optical Disk Drive Product technology and market share has allowed defendants to dictate who enters the market and at what cost. These barriers to entry have made it extremely difficult for smaller manufacturers of Optical Disk Drive Products to compete with defendants and overcome the effects of economies of scale. Accordingly, the financial structure of the optical disk drive industry allowed defendants to implement their antitrust conspiracy by eliminating competition and artificially stabilizing the prices of Optical Disk Drive Products without losing market share.

79.     Price-fixing and market allocation are easier to attain within a highly concentrated, fungible market for which adequate substitutes do not exist. All of these factors facilitate the implementation and maintenance of an antitrust conspiracy such as that perpetrated

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

by Defendants and alleged herein. The facts do not support a finding of conscious parallelism. Instead, it is evident from the facts that Defendants communicated and conspired to the detriment of consumers of Optical Disk Drive Products.

### iv. Trade Associations and Business Organizations

80.     Defendants acted to prevent downward pricing pressures from causing Optical Disk Drive Products to be sold at truly competitive prices, through means including price-fixing, bid-rigging and market allocation.

81.     Various industry trade organizations or events facilitated Defendants' Optical Disk Drive Products cartel activities. Defendants participated in many of those meetings and events to discuss Optical Disk Drive Products pricing and production with the purpose and effect of raising, fixing and stabilizing Optical Disk Drive Products prices. Such meetings occurred at or through the following industry trade associations and events:

82.     The Optical Storage Technology Association (OSTA), an international trade association formed in 1992 to promote the use of recordable optical technologies and products, and whose membership includes optical product manufacturers who represent more than 85 percent of worldwide writable optical product shipments, including LG and Sony. According to the OSTA's website, the organization's members "work to shape the future of the industry through regular meetings opf CD/DVD, file interchange, market development, magneto-optical and planning committees."

83.     The last meeting of the OSTA took place between March 16-18, 2009, at the Pacific Business Centers at 19925 Stevens Creek Blvd, Cupertino, CA 95014. At that meeting, in which the Defendants were present, they were able to meet and communicate regarding the price-fixing conspiracy. Under the guise of an industry forum, the Defendants exchanged

{SSBLS Main Documents\8062\001\00248307-1 }

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

sensitive price information and ensured that all of them charged the same price for Optical Disk Drive Products.

84.    The DVD Forum, a global group of hardware manufacturers, software firms and content providers formed in 1997 to promote and improve standards for the DVD format and products associated with that format. Hitachi, LG, Lite-On, NEC, Philips, Samsung, Sony, and Toshiba are all members of the DVD Forum.

85.    The Steering Committee of the DVD Forum met on September 10, 2009, at the Universal Hilton Hotel in Los Angeles, California. Defendant Toshiba was the chair of that Steering Committee meeting. At that meeting, the members of the conspiracy and other co-conspirators communicated with each other about the conspiracy and agreed to continue to fix the price of Optical Disk Drive Products sold across the world, including in the United States.

86.    At the DVD Forum Steering Committee Meeting on February 24, 2010, Toshiba was elected as the Chair Company, to serve in that position until February 2012. Sony was elected to serve as one of three Vice-Chair Companies. The meeting, which was hosted by Hitachi, Memory-Tech and Sony, was held at the InterContinental Tokyo Bay Hotel in Tokyo, Japan. At that meeting, the members of the conspiracy and other co-conspirators communicated with each other about the conspiracy and agreed to continue to fix the price of Optical Disk Drive Products sold across the world, including in the United States.

87.    The DVD+RW Alliance, a worldwide group formed in 1997 to promote DVD+RW/+R products and components, including hardware, disc, software and contents production. Sony and Philips are among the founding members of the DVD+RW Alliance. The DVD+RW Alliance has participated in various technology, IT and consumer electronics related

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

events and exhibitions worldwide, including but not limited to the International Consumer
Electronics Show, held annually.

88.     The Blu-ray Disc Association, a worldwide group formed in 2005 to promote the
Blu-ray Disc format and products associated with that format, with members including Hitachi,
LG, Lite-On, Philips, Sam sung, Sony, Toshiba.  The predecessor to the Blu-ray Disc
Association, known as the Blu-ray Disc Foundation, was formed in 2002 by nine industry
leaders, including Hitachi, LG, Samsung, and Sony.  The Blu-ray Disc Foundation was formed
to promote the Blu-ray Disc format, to disclose format specifications, and for cross licensing
purposes.  These goals are currently among the core goals of the Blu-ray Disc Association.

89.     Defendants Sony, LG, Hitachi, and Samsung all participated in the first meeting
of Blu-ray Disk patent owners in Los Angeles, California on July 6-7, 2006.  The stated purpose
of the event was to create joint licensing agreements amongst the participating optical disk drive
manufacturers.

90.     The Optical Data Storage Topical meeting, an industry meeting occurring
annually since approximately 1985, whose stated purpose is the exchange of information on the
status, advances, and future directions in the field of optical data storage.  At the 2009 meeting
held at the Buena Vista Palace Resort & Spa in Lake Buena Vista. Florida, Program Co-Chairs
included LG, with Samsung, Hitachi, and Sony on the Program Committee.  Advisory Co-Chairs
included Sony, with Sony, NEC, Samsung, Hitachi, and LG on the Advisory Committee.

91.     The International Consumer Electronics Show, the world's largest consumer
electronics show, held annually.  The 2010 International Consumer Electronic Show took place
from January 7-10, 2010, at the Venetian in Las Vegas, Nevada. One of the topics of
conversation at the show was the DOJ investigation into the Optical Disk Drive Products.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

Members of the conspiracy communicated with each other about the conspiracy during the 2010 International Consumer Electronics Show.

92.     The Optical Storage Symposium (OSS), a worldwide conference held annually from 2001-07.

93.     The conduct of the "business" of these organizations gave Defendants and their co-conspirators the cover needed to contact one another to communicate competitive information.

### v.    Standardization of Optical Disk Drive Products

94.     Since its inception in the 1970s, the optical disk drive industry has been typified by standardization of discs (e.g., CD-ROMs, DVD-ROMs) and Optical Disk Drive Products driven by industry participants and a variety of industry-related organizations such as ECMA International, the International Standardization Organization ("ISO"), and the International Electrotechnical Commission ("IEC"). These organizations and their members are dedicated to "standardizing the use of information communication technology and consumer electronics."

95.     The optical disk drive industry is also subject to patents and intellectual property rights which require adoption of standardized product specifications. As stated by Philips Consumer Electronics B.V., which is responsible for the development of CD technology and continues to hold patents and licensing rights arising therefrom, one of the benefits of standardization is "[c]ooperation between industry leaders, reducing the risk for 'first-mover' companies which pioneer first products or technologies."

96.     The standardization of the Optical Disk Drive Products industry provided defendants with the mechanism to implement, enforce, and oversee their anticompetitive conspiracy to fix the price of Optical Disk Drive Products. Furthermore, as a result of this

{SSBLS Main Documents\8062\001\00248307-1 }

Page 28 - CLASS ACTION COMPLAINT

standardization, Optical Disk Drive Products are commodity products, and buyers make decisions to purchase such products based largely, if not exclusively, on price.

## D.    History of Collusion

### i.    Previous Antitrust Violations

97.    Defendants have been the subject of multiple government investigations for their cartel activity in recent years. For example, Samsung admitted guilt and paid a $300 million fine following an investigation by the DOJ into price-fixing among manufacturers of dynamic random access memory ("DRAM") computer chips.

98.    Many of the Defendants named herein, have a long history of collusion, and, are either currently involved in worldwide investigations into other technology-related products, or have admitted to participating in cartels involving technology-related products.

99.    In November of 2007, the ED fined Sony and various related entities and the Hitachi Maxell Limited joint venture $110 million for fixing the prices of professional videotapes sold in Europe between 1999 and 2002. Similarly, Hitachi and Toshiba were fined by the European Commission for their roles in a conspiracy to control prices and allocate market shares in the market for gas-insulated switchgear between 1988 and 2004.

100.    More recently, the DOJ and the European Commission ("EC") have commenced investigations of Samsung, Toshiba, LG and Hitachi, among others, concerning collusion among manufacturers of thin-film transistor liquid crystal displays ("TFT-LCDs").

101.    In December of 2008, the Department of Justice ("DOJ") announced that LP Display, a joint venture between LG and Philips, would plead guilty to a DOJ indictment alleging antitrust price-fixing allegations with respect to TFT-LCDs. It has agreed to pay a $400 million fine.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET
PORTLAND, OREGON 97204
TEL. (503) 227-1600  FAX (503) 227-6840

102.    On March 10, 2009, the DOJ announced that Hitachi Displays had pled guilty to participation in the price-fixing conspiracy involving TFT - LCDs and had agreed to pay a $31 million fine.

103.    Although it has not been publicly acknowledged by Samsung, it is widely believed that defendant Samsung Electronics Co. Ltd. is in the U.S. DOJ leniency program with respect to the DOJ's investigation into the market for TFT-LCD, meaning that it has admitted its participation in the cartel. The TFT-LCD investigation is ongoing, and Toshiba Corporation, as well as other entities, remain under investigation. Such criminal investigation is being conducted by the San Francisco office of the DOJ's Antitrust Division.

104.    As in the TFT-LCD industry, many of the defendants here are not just the major manufacturers and sellers of the price-fixed product, but they are also the major manufacturers and sellers of the consumer electronics and computer products that contain the price-fixed product. For example, the LG and Samsung entities manufactured and sold both TFT-LCD panels as well as TFT-LCD flat panel televisions. Here LG and Samsung (and Hitachi, Toshiba, Philips, Lite-On and Sony) manufacture and sell both optical disk drives (e.g. DVD drives) and finished products containing those drives (e.g. DVD players, laptop computers).

105.    On October 7, 2009 in a cease and desist order, The Japan Fair Trade Commission levied $37.4 million in fines against five companies, including LG Philips Displays Korea Co. and an arm of South Korea's Samsung group and their affiliates for alleged participation in a price-fixing cartel for cathode ray tubes.

106.    The optical disk drive industry has a similar oligopoly structure to that of the TFT-LCD, DRAM and CRT industries. The Defendants' entry into price-fixing agreements in those markets (which include many of the same foreign players) supports the DOJ's

{SSBLS Main Documents\8062\001\00248307-1 }

Page 30 - CLASS ACTION COMPLAINT

investigation and other evidence showing the existence of an anticompetitive conspiracy in the Optical Disk Drive Products market.

107.    The established illegal conduct of Hitachi, LG and Samsung (as well as Philips and Sony) in a wide variety of product markets across the world, including the United States, is illustrative of Defendants' respective corporate cultures which encourage illegal activities aimed at furthering the company's bottom line at the expense of consumers.

108.    For example, in November of 2007, Kim Yong Chul, the former chief lawyer for Samsung, admitted that the company "instructed me to commit crimes." Chul continued, "[a] basic responsibility for all Samsung executives is to do illegal lobbying, buying people with money." Chul also acknowledged that he fabricated court evidence on behalf of the company and its executives, and several Samsung executives have recently been convicted of bribery and other white collar crimes.

### ii.    Antitrust Violations concerning Optical Disk Drive Products

109.    Recently, defendants disclosed and news organizations reported that there is currently a worldwide investigation by antitrust enforcement authorities into violations of antitrust laws and other anti competitive practices into the market for optical disk drives. In October of 2009, the United States DOJ acknowledged that it had commenced a criminal investigation into anticompetitive conduct in the optical disk drive industry, and that in connection with that investigation it had served subpoenas on defendants Sony Optiarc America, Hitachi-LG, and TSST. At the same time, at least one defendant acknowledged that foreign antitrust enforcement agencies were also investigating the optical disk drive industry.

110.    For example, on October 23, 2009, Sony Corporation disclosed the following in a Form 6-K it filed with the SEC:

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

Sony Corporation said today that its U.S. subsidiary, Sony Optiarc America Inc., has received a subpoena from the U.S. Department of Justice (DOJ) Antitrust Division seeking information about its optical disk drive business. Sony understands that the DOJ and agencies outside the United States are investigating competition in optical disk drives.

111.    On October 26, 2009, news sources reported that other companies, including Toshiba, Hitachi, Samsung and LG have received DOJ subpoenas. According to one of the news articles, an unnamed "source said the department began the probe in recent months, investigating disk-drive makers for possible price-fixing, bid-rigging and allocation of markets."

112.    Sony has acknowledged that it believes the request for information from the U.S. Department of Justice is part of a wider review of competition in the disk drive market by the DOJ and competition authorities in other countries.

113.    On October 27, 2009, Hitachi Ltd. and Toshiba Corporation confirmed that, like Sony Corporation, their optical disk drive operations in the United States received subpoenas from the U.S. Department of Justice in a widening investigation into potential antitrust violations. Additionally, they acknowledged that they were also under investigation by European Union and Singaporean antitrust regulators.

114.    On October 27, 2009, a United States DOJ spokeswoman, Gina Talamona, confirmed that, "[t]he antitrust division is investigating the possibility of anticompetitive practices in the optical disc drive industry."

115.    On October 28, 2009, it was announced that two of the major players in the Optical Disk Drive Products market, Sony and Philips, were fined by the a foreign antitrust enforcement agency, the Taiwan Fair Trade Commission, for their anti competitive business practices in connection with their abuse of monopoly power in the licensing of the technology for CD-Rs, the discs that go into optical disk drives.

{SSBLS Main Documents\8062\001\00248307-1 }

Page 32 - CLASS ACTION COMPLAINT

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET
PORTLAND, OREGON 97204
TEL. (503) 227-1600  FAX (503) 227-6840

116.    Pricing trends for the optical disk drive technology have not followed the

traditional price declination expected from an older technology. In fact, despite HD-DVD

vanishing from the market, prices for Blu-Ray optical disk drives have remained substantially the

same over time.

117.    It is significant that Defendants' anticompetitive behavior has been the subject of

a criminal grand jury investigation by the DOJ.  In order for the DOJ to institute a grand jury

investigation, a DOJ Antitrust Division attorney must believe that a crime has been committed

and prepare a detailed memorandum to that effect. *See* Antitrust Grand Jury Practice Manual,

Vol. 1, Ch. I.B.1 ("[i]f a Division attorney believes that a criminal violation of the antitrust laws

has occurred, he should prepare a memorandum requesting authority to conduct a grand jury

investigation.") Furthermore, following a review of the memorandum, the request for a grand

jury must be approved by the Assistant Attorney General for the Antitrust Division, based on the

standard that a criminal violation may have occurred. *See id.*  In addition, the fact that the DOJ

Antitrust Division investigation is criminal, as opposed to civil, is significant as well.  The

Antitrust Division's "Standards for Determining Whether to Proceed by Civil or Criminal

Investigation" state: "[i]n general, current Division policy is to proceed by criminal investigation

and prosecution in cases involving horizontal, per se unlawful agreements such as price fixing,

bid rigging and horizontal customer and territorial allocations." *See* Antitrust Division Manual,

Chapter III.C.5.  Accordingly, the existence of a criminal investigation into the ODD industry

supports the existence of the conspiracy alleged herein.

118.    On or about October 1,2005, the exact date being unknown to Plaintiffs,

Defendants entered into a continuing contract, combination or conspiracy to unreasonably

{SSBLS Main Documents\8062\001\00248307-1 }

Page 33 - CLASS ACTION COMPLAINT

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET
PORTLAND, OREGON 97204
TEL. (503) 227-1600  FAX (503) 227-6840

restrain trade and commerce in violation of section 1 of the Sherman Act, 15 U.S.C. § 1, and the Oregon Antitrust Law, ORS 646.725.

119. Defendants participated in meetings and conversations to discuss the price of Optical Disk Drive Products sold throughout the United States.

120. Defendants agreed during those meetings and conversations to charge prices at specified levels and otherwise to fix, increase, stabilize and/or maintain prices of Optical Disk Drives sold throughout the United States.

121. Defendants agreed to sell Optical Disk Drive Products at the agreed upon prices. Defendants sold Optical Disk Drive Products to various customers throughout the United States at artificially inflated prices.

122. The conspiracy alleged herein had and continues to have the following effects, among others.

123. As a result of the illegal conspiracy, prices charged to Plaintiffs and the Class for Optical Disk Drive Products have been raised, fixed, maintained or stabilized at artificially inflated, non-competitive levels.

124. As a result of the illegal conspiracy, Plaintiffs and the Class have been deprived of the benefits of free, open and unrestricted competition in the market for Optical Disk Drive Products.

125. As a result of the illegal conspiracy, competition in establishing the prices paid in Oregon, the United States and worldwide for Optical Disk Drive Products has been unlawfully restrained, suppressed and eliminated.

126. By reason of the violations of the Sherman Antitrust Act and the Oregon Antitrust Law, Plaintiffs and the members of the Class have sustained injury. As a direct result of

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

Defendants' conduct, the injury sustained by Plaintiffs and the Class is the payment of

supracompetitive prices for Optical Disk Drive Products. This is an antitrust injury of the type

that the federal antitrust laws and the Oregon Antitrust Law was meant to redress.

## FRAUDULENT CONCEALMENT

127. Plaintiffs and members of the Class did not discover and could not discover

through the exercise of reasonable diligence, the existence of the conspiracy alleged herein until

October 26, 2009 when it was first publicly reported that manufacturers of optical disk drives

were under investigation by antitrust authorities in the United States, and elsewhere in the world,

for anticompetitive conduct.

128. Because Defendants' agreements, understandings, and conspiracies were kept

secret until October 26, 2009, Plaintiffs and members of the Class before that time were unaware

of Defendants' unlawful conduct alleged herein, and they did not know before that time that they

were paying artificially high prices for Optical Disk Drive Products throughout Oregon during

the Class period.

129. The affirmative acts of the Defendants alleged herein, including acts in

furtherance of the conspiracy, were wrongfully concealed and carried out in a manner that

precluded detection.

130. By their very nature, Defendants' price fixing conspiracy was inherently

self-concealing. The optical disk drives industry is not exempt from antitrust regulation, and

thus, before October 26, 2009, Plaintiffs reasonably considered it to be a well-regulated

competitive industry.

131. In the context of the circumstances surrounding Defendants' pricing practices,

Defendants' acts of concealment were more than sufficient to preclude suspicion by a reasonable

{SSBLS Main Documents\8062\001\00248307-1 }

Page 35 - CLASS ACTION COMPLAINT

person that Defendants' pricing was conspiratorial. Accordingly, a reasonable person under the circumstances would not have been alerted to investigate the legitimacy of Defendants' Optical Disk Drive Products prices before October 26, 2009.

132. Plaintiffs and members of the Class could not have discovered the alleged contract, conspiracy, or combination at an earlier date by the exercise of reasonable diligence because of the deceptive practices and techniques of secrecy employed by the Defendants and their co-conspiraton to avoid detection of, and fraudulently conceal, their contract, combination or conspiracy.

133. Because the alleged conspiracy was both self-concealing and affirmatively concealed by Defendants and their co-conspirators, Plaintiffs and members of the Class had no knowledge of the alleged conspiracy, or of any facts or information that would have caused a reasonably diligent person to investigate whether a conspiracy existed, until October 26, 2009, when reports of the investigations into price fixing in the optical disk drives industry were first publicly disseminated.

134. None of the facts or information available to Plaintiffs and members of the Class prior to October 26, 2009, if investigated with reasonable diligence, could or would have led to the discovery of the conspiracy alleged herein prior to October 26, 2009.

135. Defendants also consummated affirmative acts of concealment of the conspiracy, including, inter alia, periodically issuing press statements falsely asserting that Optical Disk Drive Products were competitively priced. For example, on June 4, 2007, Sony issued a press release stating, "The player (Sony's Blu-ray Disk Player) gives a broader consumer segment the opportunity to experience the exceptional quality of Blu-ray format at a **competitive price.**" (Emphasis added.)

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET
PORTLAND, OREGON 97204
TEL. (503) 227-1600  FAX (503) 227-6840

136.    As a result of Defendants' fraudulent concealment of their conspiracy, the running

of any statute of limitations has been tolled with respect to any claims that Plaintiffs and

members of the Class have as a result of the anti competitive conduct alleged in this Complaint.

## FIRST CLAIM FOR RELIEF

## VIOLATION OF THE OREGON ANTITRUST LAW

### ORS 646.705, *et seq.*

137.    Plaintiffs incorporate by reference the allegations in the above paragraphs as if

fully set forth herein.

138.    Defendants entered into and engaged in a contract, combination or conspiracy in

restraint of trade in violation of ORS 646.725.

139.    The contract, combination or conspiracy has resulted in an agreement,

understanding or concerted action between and among Defendants in furtherance of which

Defendants instituted, fixed, maintained, raised or stabilized prices for Optical Disk Drive

Products. Such contract, combination, or conspiracy is an unreasonable and unlawful restraint of

trade.

140.    Defendants' contract, combination, agreement, understanding or concerted action

occurred in or affected commerce within the State of Oregon, and/or interstate commerce

involving an actual or threatened injury to a person or property within the State of Oregon.

Defendants' unlawful conduct was through mutual understandings or agreements by, between

and among Defendants.

141.    For purposes of formulating and effectuating their illegal contract, combination or

conspiracy, Defendants and their co-conspirators did those things they contracted, combined or

conspired to do, including:

{SSBLS Main Documents\8062\001\00248307-1 }

Page 37 - CLASS ACTION COMPLAINT

a.      Participating in meetings and conversations to discuss the prices and supply of Optical Disk Drive Products;

b.      Communicating in writing and orally to fix prices of Optical Disk Drive Products;

c.      Agreeing to manipulate prices and supply of Optical Disk Drive Products sold throughout the United States in a manner that deprived indirect purchasers of free and open competition;

d.      Issuing price announcements and price quotations in accordance with the agreements reached;

e.      Selling Optical Disk Drive Products to customers in the United States and Oregon at non-competitive prices; and

f.      Providing false statements to the public to explain increased prices for Optical Disk Drive Products.

142.      The contract, combination or conspiracy has had the following effects:

a.      Prices charged to Plaintiffs and the class for Optical Disk Drive Products were raised, fixed, maintained or stabilized at higher, artificially inflated, non-competitive levels;

b.      Plaintiffs and the Class have been deprived of the benefits of free, open and unrestricted competition in the market for Optical Disk Drive Products; and

c.      Competition in establishing the prices paid for Optical Disk Drive Products has been unlawfully restrained, suppressed and eliminated.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

143.     As a proximate result of Defendants' unlawful conduct, Plaintiffs and the Class

have suffered injury in that they have paid higher prices for Optical Disk Drive Products than

they otherwise would have paid in the absence of the unlawful conduct of Defendants.

## SECOND CLAIM FOR RELIEF

## VIOLATION OF THE SHERMAN ACT, 15 U.S.C. § 1;

## INJUNCTIVE RELIEF PURSUANT TO THE CLAYTON ACT, 15 U.S.C. § 26

144.     Plaintiffs incorporate by reference the allegations in the above paragraphs as if

fully set forth herein.

145.     Defendants' conduct as alleged herein constitute a per se violation of section 1 of

the Sherman Act, 15 U.S.C. § 1.

146.     As a proximate result of Defendants' unlawful conduct, Plaintiffs and the Class

have suffered injury in that they have paid higher prices for Optical Disk Drive Products than

they otherwise would have paid in the absence of the unlawful conduct of Defendants.

147.     If allowed to continue their unlawful conduct, Defendants will continue to harm

indirect purchasers in Oregon.  Accordingly, pursuant to section 16 of the Clayton Act, 15

U.S.C. § 26, Plaintiffs and the Class are entitled to injunctive relief in the form of an order that

Defendants, their subsidiaries, affiliates, successors, transferees, assignees and the respective

officers, directors, partners, agents, and employees thereof and all other persons acting or

claiming to act on their behalf be permanently enjoined and restrained from continuing and

maintaining the combination, conspiracy, or agreement alleged herein.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray for relief as follows:

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET
PORTLAND, OREGON 97204
TEL. (503) 227-1600  FAX (503) 227-6840

(1)     That the Court determine that this action may be maintained as a class action under Rules 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, that Plaintiffs be certified as class representatives and Plaintiffs' counsel be appointed as counsel for the Class;

(2)     That the unlawful contract, combination or conspiracy alleged be adjudged and decreed to be an unreasonable restraint of trade or commerce in violation of section 1 of the Sherman Act and the Oregon Antitrust Law, ORS 646.725;

(3)     That Plaintiffs and the Class recover damages, as provided by law, determined to have been sustained as to each of them, in an amount to be trebled in accordance with ORS 646.780(1)(a), and that judgment be entered against Defendants on behalf of Plaintiffs and of the Class;

(4)     That Plaintiffs and the Class recover their costs of the suit, including attorneys' fees, as provided by section 16 of the Clayton Act, 15 U.S.C. § 26 and ORS 646.780(3)(a);

(5)     That Defendants, their subsidiaries, affiliates, successors, transferees, assignees and the respective officers, directors, partners, agents, and employees thereof and all other persons acting or claiming to act on their behalf be permanently enjoined and restrained, pursuant to section 16 of the Clayton Act, 15 U.S.C. § 26, from continuing and maintaining the combination, conspiracy, or agreement alleged herein;

(6)     That Plaintiffs and members of the Class be awarded pre-judgment and post-judgment interest as provided by law; and

(7)     For such other and further relief as is just under the circumstances.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

## JURY TRIAL DEMANDED

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of all

of the claims asserted in this Complaint so triable.

DATED this 29th day of April, 2010.

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.

By: _____

**Steve A. Larson**, OSB No. 863540
**Scott A. Shorr**, OSB No. 961873
**Mark A. Friel**, OSB No. 002592

209 SW Oak Street, 5th Floor
Portland, OR 97204
Telephone:    (503) 227-1600
Facsimile:    (503) 227-6840
Email:        slarson@stollberne.com
              mfriel@stollberne.com
              sshorr@stollberne.com

Attorneys for Plaintiffs and the Putative Class

{SSBLS Main Documents\8062\001\00248307-1 }

Page  41 -  CLASS ACTION COMPLAINT

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840